# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN
_____

**MAFAYETTE M. FIELDS**,
      **Plaintiff,**
   v.                                                                   **Case No. 17-C-1352**

**SGT. PALUCH, et al.,**
      **Defendants.**
_____

## DECISION AND ORDER

Plaintiff Mafayette Fields, a state prisoner who is representing himself, filed a complaint under 42 U.S.C. § 1983. I allowed him to proceed on claims that (1) defendants Jeremia Paluch and Christopher Johnson violated plaintiff's Eighth Amendment rights when they failed to intervene in plaintiff's fight with another inmate; (2) defendants Dr. Phillip Wheatley, Dr. Dilip Tannan, and Nurse Tera Banda were deliberately indifferent to plaintiff's serious medical needs in violation of the Eighth Amendment when treating his injured finger; (3) defendants John Litscher, James Greer, Dr. Ryan Holzacher, and Mary Muse were deliberately indifferent to plaintiff's serious medical needs when they co-created a policy that prevented plaintiff from receiving adequate medical treatment for his injured finger; and (4) that defendant Katherine Sabel was deliberately indifferent to plaintiff's safety when she placed him in a cell next to the inmate who fought with plaintiff[1]. Before me now are the parties' cross-motions for summary judgment. Also, before me is plaintiff's motion to impose sanctions regarding defendants' alleged deposition of inmate

---

[1] I originally allowed plaintiff to proceed on a retaliation claim against defendant Sabel. (Docket No. 15). Plaintiff then moved to voluntary dismiss the retaliation claim and instead proceed on the deliberate indifference claim. (Docket No. 16). I granted plaintiff's motion to voluntarily dismiss the retaliation claim and proceed on the deliberate indifference claim. (Docket No. 29).

Thomas Zollicoffer. I will deny plaintiff's motion for summary judgment and grant defendants' motion for summary judgment. I will also deny plaintiff's motion to impose sanctions.

## I. MOTION FOR SANCTIONS

Because plaintiff's motion to impose sanctions (Docket No. 59) implicates evidence used at summary judgment, I will address this motion first. Plaintiff requests that I impose sanctions on defendants for improperly deposing a witness without providing notice. *Id.* at 1. Plaintiff submitted a declaration signed by Thomas Zollicoffer (Docket No. 51-1) as an exhibit to Plaintiff's Reply to Defendants' Response to Plaintiff's Proposed Findings of Fact. Docket No. 51. Plaintiff states that after he filed this declaration, Sarah Feltes, a "member of program services," deposed Zollicoffer regarding his declaration on July 26, 2018 without providing notice of the deposition. Docket No. 59 at 1.

Defendants' attorney, Michael D. Morris, states that he requested Feltes, who was the litigation coordinator at Oshkosh Correctional Institution, to verify the authenticity of Zollicoffer's declaration. Docket No. 61 at ¶ 5. Morris did so because plaintiff alleged that Zollicoffer was the inmate he fought with, and Morris found it "odd that he would submit a declaration in aid of a former combatant." *Id.* at ¶ 4. Morris unequivocally states that he did not take Zollicoffer's deposition, but that Ms. Feltes asked Zollicoffer whether the signature on the declaration was his. *Id.* at ¶¶ 6,8.

As part of Plaintiff's Reply to Defendant's Response to Plaintiff's Motion to Impose Sanctions, Zollicoffer submitted another declaration, which actually corroborates Morris' version of the events. Docket No. 63. Zollicoffer's declaration demonstrates that

2

Feltes questioned him on July 26, 2018 regarding the authenticity of his signature. *Id.* at ¶¶ 1-6. It does not state a deposition took place.

I find that there is nothing to sanction in this instance. It does not appear based on the record that Morris failed to notice a deposition of Zollicoffer in violation of Federal Rule of Civil Procedure 30(b). In fact, it does not appear that a deposition even took place. Under the rules of Civil Procedure, defendants are allowed to have an informal discussion with a non-party, like Zollicoffer. As a result, I deny plaintiff's motion for sanctions.

## II. SUMMARY JUDGMENT[2]

### A. Background

At all times relevant to this case, plaintiff was incarcerated at Oshkosh, Docket No. 47 at ¶ 1, and defendants were employed in the following capacities: Jeremia Paluch was a Correctional Sergeant; Christopher Johnson was a Correctional Officer; Katherine Sabel was a Corrections Unit Supervisor; Tera Banda was a Nurse; Dr. Phillip Wheatley and Dr. Dilip Tannan were Physcians; John Litscher was the Secretary of the State of Wisconsin Department of Corrections (DOC); Mary Muse was the Director of Nursing for the DOC; Dr. Ryan Holzmacher was the Medical Director of the DOC Bureau of Health Services; and James Greer was the Director of the DOC Bureau of Health Services. Docket No. 39 at ¶ 2.

---

[2] The facts are primarily taken from Plaintiff's Proposed Findings of Fact (Docket No. 34); Defendants Proposed Findings of Fact (Docket No. 39); Defendants' Response to Plaintiff's Proposed Findings of Fact (Docket No. 47); and Plaintiff's Response to Defendants' Proposed Findings of Fact (Docket No. 50).

3

### 1. The January 30, 2017 Altercation

While the parties dispute the facts of the January 30, 2017 altercation, I have the benefit of the surveillance video. The video demonstrates that at approximately 4:16 PM, plaintiff enters the area known at the Open Center, removes his coat, and fights with another inmate, whom both parties agree is Thomas Zollicoffer. Docket No. 39 at ¶ 5; Docket No. 44-1 at 4:16:28; Docket No. 50 at ¶ 5. The parties dispute whether plaintiff or Zollicoffer instigated the fight. The plaintiff maintains that Zollicoffer started the fight. Docket No. 50 at ¶ 7. Defendants claim plaintiff instigated the fight. Docket No. 39 at ¶ 5. The video shows that plaintiff was having a heated discussion with Zollicoffer as they were walking into the Open Center, Zollicoffer threw the first punch, and plaintiff vigorously responded by punching back. Docket No. 44-1 at 4:16:28.

Less than a minute later, the video shows defendants Paluch and Johnson intervening in the fight, successfully separating and restraining plaintiff and Zollicoffer. Docket 44-1 at 4:16:45. Both plaintiff and Zollicoffer appear to be fully restrained by defendants Paluch and Johnson. *Id.*

### 2. The Subsequent Treatment of the Fractured Finger

On January 30, 2017, after the altercation, plaintiff went to the Health Services Unit (HSU) for a cut lip and a finger injury resulting from the altercation. Docket No. 39 at ¶ 15. Plaintiff saw defendants Dr. Wheatley and Nurse Banda. Docket No. 34 at ¶ 15. Dr. Wheatley stitched up plaintiff's lip and ordered an x-ray for his finger. Docket No. 34 at ¶ 14; Docket No. 39 at ¶ 15. Dr. Wheatley taped plaintiff's injured finger to another finger to stabilize it ("buddy tape"). Docket No.34 at ¶ 17; Docket No. 39 at ¶ 15.

Plaintiff had the x-ray on February 1, 2017. Docket No. 39 at ¶ 15. Dr. Tannen, plaintiff's usual doctor, reviewed plaintiff's x-ray and agreed with Dr. Wheatley's recommendation. Docket No. 39 at ¶¶ 19, 31.

Plaintiff states that Dr. Wheatley initially recommended a splint for plaintiff's finger but defendant Nurse Banda informed Dr. Wheatley that per prison policy, splints were not allowed in the restricted housing unit where plaintiff was housed. Docket No. 34 at ¶¶ 17, 22; Docket No. 50 at ¶ 15. While defendants do not dispute that Nurse Banda stated that splints were not allowed in the restricted housing unit, they state that buddy taping is a form of a splint, and Dr. Wheatley held the professional medical opinion that it was appropriate treatment in this instance. Docket No. 47 at ¶ 23.

The parties also dispute what happened after plaintiff's initial treatment on January 30, 2017. Defendants state that plaintiff refused assessment on February 3 and did not complain about his finger when he visited the nurse for his lip wound on both February 6 and February 13. Docket No. 39 at ¶¶ 21-23. Defendants further state that he submitted a Health Services Request (HSR) regarding the x-ray on February 14, and on February 28, he submitted an HSR complaining about his finger. *Id.* at ¶¶ 24-25. He was then seen on March 1 by a nurse, and on March 10 by defendant Dr. Tannen. *Id.* at ¶¶ 27-28. Dr. Tannen noted a Mallet finger deformation and at that time provided plaintiff a plastic splint to treat the issue. *Id.* at ¶ 28. Dr. Tannen followed up with plaintiff on April 7, 2017 and the finger was healing appropriately. *Id.* at ¶ 29. When Dr. Tannen saw plaintiff in July and August for unrelated issues, plaintiff made no mention of the finger. *Id.* at ¶ 30.

Plaintiff states that he repeatedly complained of his finger pain in February and was ignored. He states that he refused an assessment for knee pain on February 3 and

that had nothing to do with the finger injury. Docket No. 50 at ¶ 21. He also states that when he got his stitches out on February 6, he complained to the nurse treating him, not a named defendant, of finger pain. *Id.* at ¶ 22. He further states that when he filed his HSR on February 14, he complained of pain to the nurse who took the HSR. *Id.* at ¶ 24. Plaintiff does not dispute that Dr. Tannen provided him a plastic splint on March 10 or the events of the April 7 visit with Dr. Tannen. *Id.* at ¶ 29.

### 3. The Policy related to the Splint

Plaintiff claims that he was denied a splint because, according to defendant Banda, there is a policy prohibiting splints from the restricted housing unit. Docket No. 34 at ¶ 17; Docket No. 52 at ¶ 3. Plaintiff claims that defendants Greer, Litscher, Holzmacher, and Muse are the co-creators of that policy. Docket No. 1 at ¶¶ 52-55. Defendants acknowledge that there is a policy that generally prohibits metal objects from a restricted housing unit, but state that no specific policy bans metal splints. Docket No. 39 at ¶ 35. Defendants further state that if an inmate's medical needs conflict with a housing unit policy, the policy allows for accommodations to be made. *Id.* at ¶ 34.

### 4. Plaintiff's Housing Assignment

Plaintiff claims that between March 22 and April 22, 2017, defendant Sabel housed Zollicoffer in the cell next to plaintiff. Docket No. 34 at ¶ 21. Plaintiff claims that by housing Zollicoffer next to plaintiff, defendant Sabel was deliberately indifferent to plaintiff's safety. *Id.* at ¶ 21, ¶28. Defendants state, and plaintiff does not dispute, that plaintiff did not submit any offender complaints pursuant to the Inmate Complaint Review System (ICRS) against defendant Sabel regarding the housing assignment. Docket No. 39 at ¶ 50; Docket No. 50 at ¶ 50. It is also undisputed that plaintiff filed a complaint under the ICRS

6

against defendants Paluch and Johnson for failure to protect. Docket No. 39 at ¶ 51; Docket No. 50 at ¶ 51.

   *B. Analysis*

      1. Summary Judgment Standard

A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). To survive a motion for summary judgment, a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in its favor. *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). For the purposes of deciding the parties' cross-motions, I resolve all factual disputes and make all reasonable factual inferences in favor of the non-moving party. *Springer v. Durflinger*, 518 F.3d 479, 483-84 (7th Cir. 2008).

      2. Eighth Amendment Claim for Failure to Protect

Plaintiff claims that defendants Paluch and Johnson violated his Eighth Amendment rights by failing to protect him during the January 30, 2017 altercation. To demonstrate that a prison official failed to protect an inmate in violation of the Eighth Amendment, plaintiff must show that "(1) 'he is incarcerated under conditions posing a substantial risk of serious harm,' and (2) defendant-officials acted with 'deliberate indifference' to that risk." *Brown v. Budz*, 398 F.3d 904, 909 (7th Cir. 2005) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). Two things are required to prove deliberate indifference: "[(1)] that the defendant knew of a substantial risk of serious injury to [plaintiff] and [(2)] failed to protect him from that danger." *Shields v. Dart*, 664 F.3d 178, 181 (7th Cir. 2011). For the first prong, defendants must have actual knowledge of the

substantial risk. *Guzman v. Sheahan,* 495 F.3d 852, 858 (7th Cir. 2007). Where a fight between inmates suddenly breaks out, and there is no evidence that defendants knew of a history between the inmates, then there is not "sufficient evidence for a trier of fact to conclude that [defendants] had actual knowledge of the risk of injury." *Id.*

Even if defendants have actual knowledge, defendants "incur no liability if they 'responded reasonably to the risk, even if the harm ultimately was not averted, because in that case, it cannot be said that they were deliberately indifferent.'" *Id.* at 857 (quoting *Peate v. McCann,* 294 F. 3d 879, 882 (7th Cir. 2002)). Where prison officials delay in breaking up a fight between inmates and are instead monitoring the situation and waiting for back-up, courts have held that they respond reasonably. In both *Guzman*, 495 F.3d at 857-858, and *Sheilds*, 644 F.3d at 181-182, the court found that a trier of fact could reasonably conclude that the defendant prison officials were not deliberately indifferent where the fight broke out spontaneously, and the defendant prison officials waited for other officers to respond before intervening and breaking up the fight.

Here, even when the evidence is taken in a light most favorable to plaintiff, a reasonable trier of fact could not find that defendants Paluch and Johnson had actual knowledge of a substantial risk or acted with deliberate indifference. Regarding the actual knowledge prong, plaintiff has submitted no evidence that he even had a history with Zollicoffer let alone evidence suggesting defendants knew he had a history with Zollicoffer. When this lack of evidence is combined with the fact that the fight was spontaneous, no reasonable fact-finder could conclude that defendants Paluch and Johnson had actual knowledge of a substantial risk.

Even if defendants Paluch and Johnson had actual knowledge, no reasonable factfinder could conclude that they were deliberately indifferent to the risk. The officers in this case did more than the officers in *Guzman* or *Shields*. When plaintiff's fight with Zollicoffer spontaneously broke out, defendants Paluch and Johnson successfully intervened and broke up the fight in under a minute, as evidenced by the surveillance video. Docket No. 44-1 at 4:16:28. Thus, I find in favor of defendants on plaintiff's Eighth Amendment failure to protect claim.

3. Eighth Amendment Claim for Deliberate Indifference for Failing to Treat Medical Needs

Plaintiff claims that defendants Dr. Wheatley, Dr. Tannan, and Nurse Banda were deliberately indifferent to plaintiff's serious medical needs in violation of the Eighth Amendment when treating his injured finger. The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Where prison officials act with "deliberate indifference to serious medical needs of prisoners," their actions are an "unnecessary and wanton infliction of pain" in violation of the Eighth Amendment. *Id.* To determine whether the prison official's actions violate the Eighth Amendment, the court considers two questions: (1) "whether a plaintiff suffered from an objectively serious medical condition," and (2) whether the official "was deliberately indifferent to that condition." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016).

Defendants in their brief allow for the assumption that plaintiff suffered from an objectively serious medical condition, Docket No. 38 at 15, so I turn to the question of whether defendants were deliberately indifferent to plaintiff's injured finger. A reasonable

jury could not find that defendants Dr. Wheatley, Dr. Tannen, and Nurse Banda were deliberately indifferent towards plaintiff's injured finger.

To succeed in proving that a prison official acted with deliberate indifference towards an injury, "a plaintiff must provide evidence that an official *actually* knew of and disregarded a substantial risk of harm." *Id.* (emphasis in original). This requires more than providing "mere evidence of malpractice." *Id.* Rather, a plaintiff must demonstrate that the defendant "possessed a sufficiently culpable mental state." *Zaya v. Sood*, 836 F. 3d 800, 805 (7th Cir. 2016). To do so, a plaintiff must show that the defendant's treatment was "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 262 (7th Cir. 1996). A plaintiff merely disagreeing with a doctor's medical judgment or course of treatment is not enough to overcome summary judgment. *Stallings v. Liping Zhang,* 607 Fed. Appx. 591, 593 (7th Cir. 2015). If the defendant-doctor claims to have based his treatment decision on professional judgment, he is then "effectively asserting that he lacked a sufficiently culpable mental state, and if no reasonable jury could discredit that claim, the doctor is entitled to summary judgment." *Zaya,* 836 F. 3d at 805. Also, nurses can generally defer to a doctor's professional judgment unless it is apparent that the treatment course or practice is inappropriate or questionable; then they have an obligation to question it. *Berry v. Peterman*, 604 F. 3d 435, 443 (7th Cir. 2010).

Defendants Drs. Wheatley and Tannan claim that they made their decisions based on professional judgment. Docket No. 50 at ¶¶ 23, 29. And plaintiff has offered no evidence that would allow a reasonable jury to discredit their decisions. Regarding Dr.

Wheatley, at most plaintiff alleges that Dr. Wheatley initially preferred a splint, but once Dr. Wheatley learned of the purported ban on splints in restricted housing units, he chose buddy tape instead—which he believed, in his professional medical opinion, to be sufficient. Docket No. 34 at ¶ 17; Docket No. 39 at ¶ 15. Plaintiff offers no evidence suggesting that choosing buddy tape over a physical splint, at that time, was a substantial departure from accepted practices. There is also no evidence, then, that Nurse Banda erred in deferring to Dr. Wheatley's recommendation.

Regarding Dr. Tannen, even when the facts are taken in a light most favorable to plaintiff, a reasonable factfinder could not determine that Dr. Tannen was deliberately indifferent to plaintiff's serious medical needs. While plaintiff alleges that various HSU staff ignored his complaints of pain, Docket No. 50 at ¶¶ 21-24, those HSU staff members are not named defendants. Plaintiff has not alleged anything suggesting that Dr. Tannen ignored these complaints or acted with deliberate indifference as a result of those complaints.

Nor could a reasonable factfinder determine that Dr. Tannen's treatment was deliberately indifferent because plaintiff offers no evidence that Dr. Tannen's actions were a substantial departure from acceptable practices. Dr. Tannen reviewed plaintiff's x-ray on February 1 and agreed, in his professional medical judgment, with Dr. Wheatley's choice to use the buddy tape. Docket No. 39 at ¶¶ 19, 31. Nothing in the record suggests that Dr. Tannen was aware that plaintiff's finger was not properly healing until plaintiff made an HSR to see Dr. Tannen about the finger. *Id.* at ¶¶ 27-28. And at the appointment on March 10, Dr. Tannen immediately noticed that the finger was not healing as it should and made another judgment call to change plaintiff's course of treatment to a splint. *Id.* at

¶ 28. At the follow-up appointment on April 7, plaintiff does not dispute that his finger was healing properly. Docket No. 50 at ¶ 29. Plaintiff, then, fails to demonstrate that defendants Dr. Wheatley, Dr. Tannen, and Nurse Banda acted with deliberate indifference, and so I grant summary judgment in the favor of defendants.

    4. Eighth Amendment Claim for Deliberate Indifference Because Policy Prevented Treatment of Medical Needs

Plaintiff also claims that defendants Litscher, Greer, Holzacher, and Muse were deliberately indifferent to plaintiff's serious medical needs when they co-created a policy that prevented plaintiff from receiving adequate medical treatment for his injured finger. To hold policy makers liable for a constitutional violation, plaintiff must demonstrate that enforcing the policy "causes a constitutional deprivation." *Childress v. Walker*, 787 F. 3d 433, 440 (7th Cir. 2015) (citing *Brokaw v. Mercer County*, 235 F. 3d 1000, 1013 (7th Cir. 2000)). Plaintiff is arguing that the policy banning metal splints from restricted housing units caused defendants to be deliberately indifferent to his medical needs in violation of the Eighth Amendment.

The parties dispute whether such a policy even exists. Considering the facts in a light most favorable to plaintiff, there is a policy that restricts the use of metal objects in restricted housing units. However, this policy did not cause plaintiff a constitutional deprivation. As discussed above, I find that a reasonable fact finder could conclude that plaintiff's treatment—specifically opting for buddy tape over a metal splint—was reasonable and within the acceptable professional standards or practices. Defendants' refusal to provide a metal splint pursuant to policy does not deprive plaintiff of his Eighth Amendment rights and summary judgment in favor of defendants on this claim is appropriate.

### 5. Eighth Amendment Claim for Deliberate Indifference to Inmate's Safety

Plaintiff claims that defendant Sabel violated his Eighth Amendment rights because housing him next to inmate Zollicoffer was deliberately indifferent to his safety. Defendants argue that summary judgment should be granted because plaintiff failed to exhaust his administrative remedies regarding this claim. Docket No. 39 at ¶¶ 50-51.

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Housing situations fall under the definition of prison conditions. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002) (holding that "the PRLA's exhaustion requirement applies to all inmate suits about prison life.") Under the PRLA, a district court must dismiss suits filed by prisoners if the prisoner has yet to exhaust his administrative remedies because "the district court lacks discretion to resolve the claim on the merits . . . ." *Perez v. Wisc. Dept. of Corrections*, 182 F.3d 532 (7th Cir. 1999).

Here, neither party disputes that with regards to plaintiff's claim against defendant Sabel for the housing assignment, plaintiff failed to file a complaint pursuant to ICRS. Docket No. 39 at ¶ 50; Docket No. 50 at ¶ 50. Thus, I will grant the defendants' motion for summary judgment on the claim against defendant Sabel on exhaustion grounds.

*C. Summary*

I grant summary judgment in favor of the defendants on all claims. A reasonable trier of fact could not conclude that defendants Paluch and Johnson were deliberately indifferent and failed to protect plaintiff during the January 30, 2017 altercation because the evidence demonstrates they were not aware of the threat, and they intervened immediately. Nor could a reasonable fact finder conclude that defendants Dr. Wheatley, Dr. Tannan, and Nurse Banda were deliberately indifferent to plaintiff's medical needs because plaintiff fails to raise a question of material fact that the treatment plaintiff received was not reasonable and not within acceptable medical standards. A reasonable trier of fact then also could not conclude that defendants Litscher, Greer, Holzacher, and Muse co-created a policy that caused defendants to be deliberately indifferent to plaintiff's serious medical needs. Finally, there is no factual dispute as to whether plaintiff exhausted his administrative remedies as to his claim against defendant Sabel, so I grant summary judgment for that claim on exhaustion grounds.

**ORDER**

**THEREFORE, IT IS ORDERED** that plaintiff's motion to impose sanctions (Docket No. 59) is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff's motion for summary judgment (Docket No. 32) is **DENIED**.

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment (Docket No. 37) is **GRANTED.**

**IT IS FURTHER ORDERED** that this case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin, this 15th day of November, 2018.

                                          s/Lynn Adelman_____
                                          LYNN ADELMAN
                                          United States District Judge